# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

Travis Gregory Kadel,                                    **Civil No. 11-1631 (DSD/SER)**

            Petitioner,

v.                                                       **REPORT & RECOMMENDATION**

Mark Theilen, Warden,

            Respondent.

_____

     Travis Gregory Kadel, *pro se*, #100738, Minnesota Correctional Facility-Fairbault, 1101 Linden Lane, Fairbault, Minnesota 55021.

     David J. Hauser, Kimberly R. Parker, & Matthew Frank, Esqs., Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1800, Saint Paul, Minnesota, 55101.

_____

STEVEN E. RAU, United States Magistrate Judge.

     Petitioner Travis Gregory Kadel ("Kadel"), currently a state inmate at Minnesota Correctional Facility at Fairbault, filed a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody on June 22, 2011. [Doc. No. 1]. Kadel alleged three grounds for relief: (1) violation of his right to confrontation under the Sixth Amendment of the United States Constitution; (2) ineffective assistance of trial counsel; and (3) ineffective assistance of appellate counsel. Respondent Mark Theilen ("Theilen") filed a response to the Petition arguing that the state courts' resolution of Kadel's claims was neither contrary to nor an unreasonable application of federal law. The matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1(a). For the reasons discussed below, the Court recommends that the Petition be denied and that this action be dismissed.

## I.      BACKGROUND

On May 25, 2007, a jury convicted Kadel of first-degree assault in violation of Minn. Stat. § 609.221, subdiv. 1 (2006) and third-degree assault in violation of Minn. Stat. § 609.223, subdiv. 1 (2006).[1]  Presently, he is serving his sentence of 189 months at the Minnesota Correctional Facility in Fairbault, Minnesota.

In late February 2007, Kadel allegedly assaulted K.A., his girlfriend.  K.A. went to a hospital emergency room with severe injuries, including broken facial bones.  Hospital personnel believed her injuries mandated a police report and contacted local authorities.  The Fergus Falls Police Department dispatched Officer Paul Peterson ("Officer Peterson") to speak with K.A.; she told Officer Peterson that three unknown individuals assaulted her behind a house.

The next day, Officer Peterson received information that Kadel assaulted K.A.  When Officer Peterson confronted K.A. with these reports, she replied, "Well, you guys aren't dumb." *State v. Kadel*, No. A07-1468, 2008 WL 5135431, at *1 (Minn. Ct. App. Dec. 9, 2008) (*Kadel I*), *review denied* February 17, 2009.  She provided police with tape-recorded and written statements that Kadel punched her in the face.  She also assisted police by luring Kadel to a motel where the two had been staying so they could arrest him.  Several days later, K.A. obtained a protection order against Kadel.

Two days after K.A. obtained her protection order, she called Officer Peterson with concerns about Jose Gonzalez's ("Gonzalez") behavior.  Gonzalez lived in the basement of the residence where the assault occurred.  K.A. reported that Gonzalez had a gun and she was afraid of what he might do.  Local authorities arrested Gonzalez, a convicted felon, and charged him

---

[1]      The facts and procedural history provided herein are taken from the Court of Appeals' decision on Kadel's direct appeal, *State v. Kadel*, No. A07-1468, 2008 WL 5135431 (Minn. Ct. App. Dec. 9, 2008) (*Kadel I*), *review denied* February 17, 2009, and his appeal on his petition for postconviction relief, *Kadel v. State*, No. A10-1408, 2011 WL 1237537 (Minn. Ct. App. Apr. 5, 2011) (*Kadel II*), *review denied* June 14, 2011.

with a weapons offense.  Thereafter, K.A. made statements to a defense investigator that it was Gonzalez, not Kadel, who assaulted her.

At trial, K.A. testified that she was not sure what to tell Officer Peterson when he came to the hospital, so she made up a story about three attackers.  She said that she later blamed Kadel for the assault because Gonzalez told her to do so.  K.A. continued to implicate Kadel because she was afraid of and dependent on Gonzalez.  K.A. testified that she was a heavy methamphetamine user with several prior convictions and explained that she worked as Gonzalez's driver in exchange for drugs and a room at a motel.  She alleged that once Gonzalez was arrested, she felt free to tell the truth.

After he was convicted and sentenced, Kadel took direct appeal of his conviction to the Minnesota Court of Appeals alleging that the trial court (1) erred in admitting K.A.'s out-of-court statements that contradicted her trial testimony; (2) violated his right to confront witnesses by allowing Officer Peterson to testify about several out-of-court statements by witnesses who did not testify at trial; and (3) abused its discretion by admitting evidence of the relationship between K.A. and Kadel.  Kadel also filed a separate *pro se* supplemental brief challenging the effectiveness of his trial counsel.

The Minnesota Court of Appeals found Kadel's evidentiary claims and his ineffective assistance of trial counsel claim meritless.  The court affirmed Kadel's conviction and the Minnesota Supreme Court denied review on February 17, 2009.

Kadel then filed a *pro se* petition for postconviction relief with the Otter Tail County District Court.  Again, Kadel alleged ineffective assistance of trial counsel, but cited different factual bases for his claim than those relied on in his direct appeal.  Kadel also alleged he was entitled to relief because his appellate counsel was ineffective.

The state district court denied Kadel's postconviction petition without an evidentiary hearing. The court concluded that *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976), procedurally barred Kadel's ineffective assistance of trial counsel claim. Also, the court found Kadel's ineffective assistance of appellate counsel claim had no merit.

Kadel challenged the state district court's decision on appeal, arguing that his ineffective assistance of trial counsel claim fell within an exception to *Knaffla* that permits claims when fairness requires and where the petitioner did not deliberately and inexcusably fail to raise the issue on direct appeal. The Minnesota Court of Appeals court rejected Kadel's assertions. In doing so, the court of appeals agreed that *Knaffla* barred Kadel's ineffective assistance of trial counsel claim. The court of appeals also agreed his ineffective assistance of appellate counsel claim failed because Kadel could not demonstrate that his appellate counsel's performance fell below an objective standard of reasonableness or that the outcome of his appeal would have been different. The Minnesota Supreme Court denied further review on June 14, 2011. Kadel did not seek further review of his conviction and sentence until he filed the instant habeas petition on June 22, 2011.

## II.    DISCUSSION

Kadel asserts three grounds in his habeas petition. One of the grounds is procedurally defaulted; therefore, it is denied summarily. The Court first addresses the procedurally defaulted claim and then analyzes the remaining two claims on their merits.

### A.  Procedurally Defaulted Claim

A federal constitutional claim is reviewable in a § 2254 habeas corpus proceeding only if that claim was first "fairly presented" to the highest available state court for their determination

on the merits.  28 U.S.C. § 2254(b)(1).  The United States Supreme Court has explained this

requirement as follows:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust
> available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the
> "'opportunity to pass upon and correct' alleged violations of its prisoners' federal
> rights."  To provide the State with the necessary "opportunity," the prisoner must
> "fairly present" his claim in each appropriate state court (including a state
> supreme court with powers of discretionary review), thereby alerting that court to
> the federal nature of the claim.

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal citations omitted).

A claim has not been "fairly presented" if a state appellate court expressly declines to

address a particular claim on the merits because the claim was not raised in accordance with

applicable state procedural rules.  *Hall v. Delo*, 41 F.3d 1248, 1250 (8th Cir. 1994).  A claim that

is not fairly presented is procedurally defaulted for purposes of federal habeas corpus.  *Id.*

If a Minnesota appellate court refuses to consider a claim on the merits because of the

*Knaffla* rule, that claim is procedurally barred from review on the merits in federal habeas

proceedings.  *McCall v. Benson*, 114 F.3d 754, 757–58 (8th Cir. 1997).  The *Knaffla* rule

provides that all matters raised in a petitioner's direct appeal and all claims known but not raised,

will not be considered in a subsequent postconviction petition.  *McCall*, 114 F.3d at 757 (citing

*State v. Knaffla*, 243 N.W.2d 737, 741 (1976)).  In *Murray v. Hvass*, the Eighth Circuit

considered the *Knaffla* rule specifically and explained that "it is not the province of a federal

court to decide whether a matter ought to be considered procedurally defaulted under state law."

269 F.3d 896, 899–900 (8th Cir. 2001) (citations omitted).

A procedurally defaulted claim will not be entertained in a federal habeas corpus

proceeding, unless the petitioner has shown "cause and prejudice" to excuse the procedural

default, or, in the alternative, that there would be a "fundamental miscarriage of justice" if the

federal court declined to consider the claim. *Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991). The "cause and prejudice" exception is available only when a petitioner demonstrates that some cause, or an "external impediment," prevented him from presenting his claims to the state's highest court in a timely and procedurally proper manner, resulting in actual prejudice. *Id.* The "fundamental miscarriage of justice" exception is available only upon a "showing, based on new evidence, that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Brownlow v. Groose*, 66 F.3d 997, 999 (8th Cir. 1995), *cert. denied*, 516 U.S. 1161 (1996) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Kadel's habeas petition claims he was denied his constitutional right to effective assistance of trial counsel during the original trial proceedings. Kadel first challenged the effectiveness of his trial counsel in a *pro se* brief on direct appeal. There, Kadel alleged his trial counsel (1) was assigned to his case just a few days before trial and was not prepared adequately; (2) knew the prosecutor improperly gave a witness access to the victim's statement; (3) allowed the state to coerce a witness into false testimony; (4) failed to make appropriate objections; and (5) failed to make necessary pretrial psychiatric examination motions or use all related defenses. The Minnesota Court of Appeals observed that Kadel failed to "submit[] any evidence to support his bare assertions that his counsel's performance was deficient." *Kadel I*, at *6. Then, the court found Kadel's counsel was adequately prepared, citing her appropriate pretrial motions, questioning of witnesses, and objections. The court concluded Kadel's assistance of trial counsel claim had no merit because it lacked support and no prejudicial error was "obvious on mere inspection." *Id.* Thus, his conviction was affirmed.

In his postconviction relief petition, Kadel again argued his trial counsel was ineffective. He relied on different factual grounds for his allegation than in his direct appeal. In his

6

postconviction petition, Kadel argued his trial attorney was ineffective for (1) failing to seek a limiting jury instruction defining the meaning of "great bodily harm" set forth in Minnesota Statute § 609.02, subdiv. 8 and (2) failing to raise and preserve for appeal the issue of vagueness of the statutory term "great bodily harm."[2]  The district court found this claim *Knaffla* barred because these factual bases were either raised and decided on direct appeal, or were known and not raised on direct appeal.  The court went on to note that even if an exception to *Knaffla* applied and it addressed Kadel's claims on the merits, Kadel failed demonstrate that he was entitled to relief.

On appeal from the postconviction court's decision, the Minnesota Court of Appeals declined to address the merits of the ineffective assistance of trial counsel claim and agreed with the lower court that *Knaffla* barred it.

Despite the state courts' dismissals, Kadel again presented his claim for ineffective trial counsel in his habeas petition and asserted the same grounds as those in his petition for postconviction relief.  Kadel contends that *Knaffla* is not appropriate in this case because his ineffective assistance of trial counsel claim, as stated in his petition for postconviction relief and in his federal habeas petition, rests on different factual grounds than the same claim on direct appeal.  This argument is unsustainable because *Knaffla* bars all matters actually raised direct appeal and all claims known but not raised.  The factual bases on which Kadel now asserts this claim were known to him at the time of his direct appeal.  Consequently, the Minnesota Court of

---

[2]     The statute under which Kadel was charged, Minn. Stat. § 609.221 (2006), requires that a person assault another and inflict "great bodily harm."  The term "great bodily harm" means "bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss of impairment of the function of any bodily member or organ or other serious bodily harm."  Minn. Stat. § 609.221, subdiv. 8.  "Bodily harm" means "physical pain or injury, illness, or any impairment of physical condition.  Minn. Stat. § 609.221, subdiv. 7.

Appeals properly concluded that the *Knaffla* rule prohibited it from reconsidering Kadel's claim on the "new" grounds.

Two additional points merit discussion.  First, Kadel's habeas petition suggests the state courts misunderstood or misapplied the *Knaffla* rule.  This argument is unavailing.  A federal court is prohibited from re-examining the state courts' interpretation and application of state law. *See Clemons v. Luebbers*, 381 F.3d 744, 750 (8th Cir. 2004).  Thus, this Court cannot scrutinize and reverse the state courts' determination that the *Knaffla* rule procedurally barred Kadel's ineffective assistance of trial counsel.

Second, Kadel contends that *Knaffla* should not bar this claim because it would be inconsistent with his "rights to appellate representation, [right] to due process, and [right] to access to the courts."  (Kadel's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, Appendix, at 10, hereinafter "Pet.") [Doc. No. 1].  The Court interprets this as an attempt to challenge the constitutionality of the *Knaffla* rule in cases where a *pro se* petitioner attempts to add, supplement, or change the factual bases for a claim during proceedings subsequent to direct appeal.  This argument is a new challenge to the constitutionality of Kadel's conviction.  Kadel never submitted this argument to a Minnesota court and, therefore, it is unexhausted.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Furthermore, no state remedy remains available to Kadel for this argument because a state procedural rule—namely, *Knaffla*—prohibits further attempts to satisfy the exhaustion requirement.  For that reason, this argument is procedurally defaulted.  *Coleman*, 501 U.S. at 750; *McCall*, 114 F.3d at 757.  If Kadel wished to challenge the constitutionality of *Knaffla*, he was required to do so in his appeal from the postconviction court.  Because he failed to do so, state procedural law now bars the argument and no state court will consider it.

All factual and legal bases for Kadel's ineffective assistance of trial counsel claims were fully ascertainable when he sought his direct appeal. Kadel failed to raise the factual grounds he now rests on at that time. Consequently, this claim was not fairly presented to the Minnesota state courts and this alleged ground for relief has been procedurally defaulted for federal habeas corpus purposes and the claim cannot be adjudicated on the merits.

A procedurally defaulted claim may be entertained if the petitioner can demonstrate "cause and prejudice" to excuse the procedural default or, alternatively, a "fundamental miscarriage of justice" would result if the federal court declined to consider the claim. *Coleman*, 501 U.S. at 749–50. The cause and prejudice exception is available when a petitioner establishes some external impediment blocked his efforts to present claims to the highest state court. *Id.* at 753. Kadel made no effort to suggest any legally sufficient reason to excuse his procedural default and nothing before the Court suggests that Kadel's failure to comply with Minnesota's *Knaffla* rule was the result of any external impediment. Therefore, Kadel failed to satisfy the "cause" component of the cause and prejudice exception, it is unnecessary to consider whether he could satisfy the prejudice component. *Ashker v. Class*, 152 F.3d 863, 871 (8th Cir. 1998).

To qualify for the application of the "fundamental miscarriage of justice" or actual innocence exception, Kadel must present new compelling evidence that would establish he is innocent of the crimes conclusively. *Coleman*, 501 U.S. at 750. Kadel has not presented any new and previously undiscoverable evidence that proves he is innocent. His current claims for relief allege only legal errors at his trial or on appeal that purportedly deprived him of certain constitutional guarantees. Therefore, Kadel cannot overcome his procedural default by way of the actual innocence exception.

9

This ground of Kadel's habeas petition is procedurally defaulted because it was not fairly presented to the Minnesota Supreme Court in a procedurally appropriate manner. Furthermore, this procedural default cannot be excused based on either cause and prejudice or a fundamental miscarriage of justice through new proof of actual innocence. Accordingly, the Court concludes that none of his procedurally defaulted habeas corpus claims can be entertained here and recommends this ground be denied summarily.

### B.  Substantive Analysis of Remaining Claims

#### 1.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (codified as amended in scattered sections of 28 U.S.C.) ("AEDPA") prescribes the standards that govern this Court's substantive review of Kadel's Habeas Petition. The relevant portion of AEDPA provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362, 405-11 (2000), the United States Supreme Court discussed how federal district courts should apply the AEDPA. State court decisions are "contrary to" Supreme Court precedent under § 2254(d) when the state court: (1) reaches a conclusion opposite to the Supreme Court on a question of law; or (2) arrives at a result opposite

to Supreme Court precedent involving "materially indistinguishable" facts. *Id*. at 405. The "unreasonable application" clause of § 2254(d)(1) provides that even if the state court correctly identifies the relevant Supreme Court principle, a federal court may grant a prisoner's writ if the state court applied the principle unreasonably to the facts of the case. *Id.* at 413. The standard for determining whether a state court's decision is an "unreasonable application," is "whether the state court's application of clearly established federal law was **objectively unreasonable**. . . ." *Id.* at 409 (emphasis added). A writ may not be issued simply because the federal court concludes the state court's application of federal law was erroneous or incorrect, but only where the state court's decision was also unreasonable. *Id.* at 411.

A writ of habeas corpus may also be available where the state courts' resolution of a prisoner's criminal case is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Habeas relief can therefore, be granted if the conviction is based on findings of fact that could not be derived reasonably from the state court evidentiary record. When reviewing a state court decision, however, "a federal court . . . presumes that the state court's factual determinations are correct," and such a presumption "may be rebutted only by clear and convincing evidence." *Lee v. Gammon*, 222 F.3d 441, 442 (8th Cir. 2000).

Needless to say, a federal district court is not allowed to conduct its own *de novo* review of a prisoner's constitutional claims. Habeas relief cannot be granted unless the prisoner has identified, and substantiated, a specific error committed by the state courts. Moreover, he must show that the state courts committed the type of error that is actionable under § 2254(d), as that statute has been interpreted in *Williams*.

## 2. Right to Confrontation Under the Sixth Amendment Claim

In the first ground of his Petition, Kadel maintains the admission of portions of Officer Peterson's testimony violated his Sixth Amendment right to confrontation. The allegedly violative testimony referred to the out-of-court statements of witnesses who did not testify at trial. Kadel argues that admission of those allegedly hearsay statements contravened his constitutional right to confront witnesses.

The Confrontation Clause of the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, the Supreme Court held that the Confrontation Clause prohibits the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." 541 U.S. 36, 53–54 (2004).

Kadel's Confrontation Clause claim arises from the admission of Officer Peterson's testimony explaining the steps taken in his initial decision to investigate Kadel. Kadel cites the following portion of Officer Peterson's testimony as relevant to his claim:

> We got information from the other people that it was probably her boyfriend that had assaulted her. That was what everybody was telling us . . . . I got ahold of the [couple who owned the Union Avenue residence where the assault occurred] and faxed them a photo of [appellant] . . . ; and they confirmed that, in fact, was [K.A.'s] boyfriend, Travis.

(Pet. at 1); *Knaffla I*, at *4. Specifically, it seems Kadel finds that Officer Peterson's references to "other people" and "everybody" violate his constitutional rights. (*See* Pet. at 1, 2, 3).

The "everybody" to whom Officer Peterson referred was the Engmans, a couple who lived above Gonzalez's apartment and who were present the night of the assault. The prosecution never called the Engmans or explained their absence from trial. Kadel argues that

because those witnesses did not testify at trial, their statements are inadmissible hearsay.  He further asserts that admission of the inadmissible hearsay violated his constitutional right to confront witnesses.

In its consideration of the contested testimony, the Minnesota Court of Appeals noted that Officer Peterson did not testify about specific conversations and that Kadel did not object to Officer Peterson's testimony regarding his photo.  The court went on to find that even if the trial court wrongfully admitted Officer Peterson's testimony, it was nevertheless harmless error.[3]  Then, the court held that any violation of Kadel's confrontation rights caused by the admission of Officer Peterson's testimony was harmless beyond a reasonable doubt.

"A violation of the Confrontation Clause is subject to harmless error analysis."  *Barrett v. Acevedo*, 169 F.3d 1155, 1164 (8th Cir. 1999).  In a habeas corpus case, federal courts apply one of two standards for harmless error review.  The first is the more deferential standard articulated in *Brecht v. Abrahamson*, 507 U.S. 619 (1993).  Under the *Brecht* standard, the question is whether the error had a substantial and injurious effect or influence in determining jury's verdict.  *Brecht*, 507 U.S. at 637–38.  This standard applies to constitutional errors that have already been subject to a harmless error analysis by state courts.  *Barrett*, 169 F.3d at 1164 (citing *Joubert v. Hopkins*, 75 F.3d 1232, 1245 (8th Cir. 1996)).  The second, more exacting standard was set out in *Chapman v. California*, 386 U.S. 18 (1967).  Under the *Chapman* standard, before a federal constitutional error can be held harmless, the reviewing court must be able to declare a belief that it was harmless beyond a reasonable doubt.  *Chapman*, 386 U.S. at 24.  That standard is applicable in cases were the state court did not apply the *Chapman* analysis in its adjudication.

---

[3]     The Minnesota Court of Appeals' decision on direct appeal does not include further analysis of whether these statements are testimonial hearsay.  This Court declines to do so and proceeds under the assumption Officer Peterson's statements are within the purview of *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004).

*Barrett*, 169 F.3d at 1164.  Here, the Minnesota court conducted harmless error review, but did not rely explicitly on the *Chapman* standard for review of the constitutional errors.[4]  Although it appears the state courts applied a similarly rigorous test, this Court need not determine which standard is appropriate in its review because even under the more stringent *Chapman* standard, the admission of the statements was harmless error.

To determine whether error is harmless beyond a reasonable doubt in an alleged Confrontation Clause violation, the Court must examine the other trial evidence and determine whether it appears beyond a reasonable doubt that the error contributed to the verdict obtained. *Barrett*, 169 F.3d at 1164 (citation omitted).  The courts must consider a host of factors, including:

> (1) the importance of the witness's testimony to the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of corroborating or contradicting testimony of the witness on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution's case.

*Id.* (citation omitted).  A review of the record before the Court supports the conclusion of harmless error in this case.

First, this portion of Officer Peterson's testimony was not of great importance to the prosecution's case.  The testimony merely provided a background explanation for the initial police investigation of Kadel.  Also, Officer Peterson did not mention specific conversations he

---

[4]     The Minnesota Court of Appeals applied the harmless error test as it was articulated by the Minnesota Supreme Court in *State v. Caulfield*, 722 N.W.2d 304, 314 (Minn. 2006). Although *Caulfield* does not cite *Chapman*, it holds that "[a] constitutional error does not mandate reversal and a new trial if we determine that the error was harmless beyond a reasonable doubt." *Caulfield*, 722 N.W.2d at 314.  The *Caulfield* court described the analysis for harmless error as a matter of "whether the error could reasonably have impacted upon the jury's decision." *Id.* (citation omitted).  Then, the court listed a number of factors to be considered in determining whether a jury verdict was attributable to the an erroneous admission of evidence: the manner in which the evidence was presented, whether it was highly persuasive, whether it was used in closing argument, whether it was effectively countered by the defendant, and overwhelming evidence of guilt.  *Id.* (citations omitted).

had with any witnesses, including the Engmans.  Officer Peterson's references were brief and in passing.  They played a minor role in the state's case again Kadel.

Second, to the extent Kadel finds portions of Officer Peterson's testimony regarding his relationship with K.A. offensive, it is cumulative.  The jury had already been told Kadel was K.A.'s boyfriend.

Third, the record corroborates Officer Peterson's testimony.  K.A.'s mother and father each testified that K.A. told them Kadel hit her.  Gonzalez also testified that immediately after the assault K.A. told him Kadel hit her in the face.  In addition, the prosecutor introduced K.A.'s written and recorded police statements implicating Kadel.  Furthermore, K.A. did not deny that she told her parents and Gonzalez about Kadel's assaults.  Also relevant is the fact that K.A. requested and obtained an order for protection against Kadel a few days after the assault.  From that, the factfinder could infer K.A. was afraid of Kadel.

Fourth, the Court acknowledges that the prosecution never called the Engmans or explained their absence from trial and he never had the opportunity to cross-examine them. Nonetheless, Kadel had the opportunity to cross-examine Officer Peterson.  Nothing in the record before the Court suggests he seized that opportunity to question Officer Peterson regarding the reliability of the Engmans' comments or any "other people."

Finally, the strength of the prosecution's overall case was formidable.  As noted above, to establish Kadel's involvement in the assault, the prosecution introduced the testimony of four individuals that K.A. told them Kadel hit her, as well as written and recorded statements from K.A. herself.

In light of the evidence presented, a reasonable juror could find Kadel guilty of the crimes charged without considering the contents of Officer Peterson's challenged testimony.

Therefore, the introduction of the testimony amounted to harmless error and Kadel's claim fails on the merits.

### 3.  Ineffective Assistance of Appellate Counsel Claim

In his third and final ground for relief, Kadel claims his appellate counsel was ineffective failing to include two additional arguments on direct appeal: (1) the lack of proof for his conviction for first-degree assault and (2) ineffective assistance of trial counsel.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  To state a claim for ineffective assistance of counsel, a petitioner must demonstrate that (1) counsel's representation was deficient and (2) the deficiency prejudiced his case. *See Miller v. Dormire*, 310 F.3d 600, 602 (8th Cir. 2002) (quoting *Strickland*, 466 U.S. at 687–88).  Both prongs of the *Strickland* test must be satisfied to obtain relief; if either prong is unproven, the reviewing court need not analyze the other prong. *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

The first prong requires a petitioner to demonstrate that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.  Under this prong, the petitioner must show that counsel's representation was objectively unreasonable. *Stacey v. Solem*, 801 F.2d 1048, 1051 (8th Cir. 1986); *see also Theus v. United States*, 611 F.3d 441, 446–47 (8th Cir. 2010) (analyzing § 2255 petition).  "To establish a claim for ineffective assistance of counsel, a defendant faces a heavy burden . . . Judicial scrutiny of counsel's performance must be highly deferential." *United States v. Williams*, No. 09-3473, 2011 WL 5117914, at *2 (D. Minn. Oct. 26, 2011) (internal citations omitted).

To satisfy the second prong of *Strickland*, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Strickland*, 466 U.S. at 694.  It is not sufficient for a defendant to show that the error had some "conceivable effect" on the result of the proceeding.  *Id.* at 693.

In the context of § 2254 ineffective assistance of counsel claims,  the question is not whether a federal court believes the state court's determination under *Strickland* was correct, but whether that determination was unreasonable—a substantially higher threshold.  *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009) (internal citations omitted).   Further, because the *Strickland* standard is a general standard, a state court is afforded even more latitude to reasonably determine that a defendant has not satisfied that standard.  *Id.*

Kadel raised his argument of effective assistance of appellant counsel for the first time in his petition for postconviction relief.  As Kadel noted in his habeas petition, the claim was still viable at that time.   In fact, the Minnesota Court of Appeals explicitly acknowledged that although Kadel did not raise this claim in his supplemental *pro se* brief on direct appeal, "a claim of ineffective assistance of appellate counsel generally cannot be raised on direct appeal."  *Kadel II*, at *2.  With that, the court implicitly concluded that—unlike his claim of ineffective trial counsel—Kadel's claims regarding his appellate counsel were **not** *Knaffla* barred.   Indeed, the appellate court considered his ineffective appellate counsel claim and found it to be without merit.  Thus, Kadel's procedural arguments are misplaced.

Second, Kadel challenges the merits of the arguments presented by his appellate counsel, particularly in relation to the arguments he believes should have been made.  On direct appeal, Kadel's appellate counsel proffered three primary arguments: (1) the trial court committed reversible error when it allowed the prosecutor to call K.A.; (2) the trial court violated Kadel's constitutional right to confront witnesses when it allowed Officer Peterson to testify about out-

of-court statements of eyewitnesses who did not testify at the trial; and (3) the trial court committed reversible error when it allowed evidence of the relationship between Kadel and K.A.

Although the appellate court denied relief with respect to each of these claims, the postconviction court recognized they were meritorious issues. The postconviction court also acknowledged Kadel's appellate counsel had no duty to advance every conceivable argument that the trial record could support. That court further noted his appellate counsel had no duty to include claims which would detract from the more meritorious issues. Accordingly, the state courts found the issues advanced by Kadel's appellate counsel more meritorious than those he advocates.

Nevertheless, Kadel contends both of his proposed arguments have more merit than those advanced by his appellate counsel. Kadel's first proposed argument relates to the evidence for his first-degree assault conviction. Specifically, Kadel asserts his counsel should have challenged the sufficiency of the evidence as to "great bodily harm," a required statutory element. (Pet. at 13). Minnesota courts have long held that whether a particular injury constitutes "great bodily harm" is a question for the jury. *State v. Moore*, 699 N.W.2d 733, 737 (Minn. 2005) (citing *State v. Bowers*, 228 N.W. 164, 165 (Minn. 1929)). At the conclusion of his case, Kadel's trial counsel moved for directed verdict on this issue. (*See* Pet. at 14). In denying the motion, the trial court found that the evidence of the injuries in the record supported the element of "other serious bodily harm" required under Minn. Stat. § 609.221, subdiv. 8. With that, the court found that there was a sufficient basis for question to be submitted to the jury. These facts support the trial court's decision to ask the jury to determine whether the injuries constituted "great bodily harm." Thus, Kadel has not shown this argument would have been successful, had it been raised on appeal. As such, even if Kadel could show that his

appellate counsel's performance was deficient on this point, he has not demonstrated prejudice under the second prong of *Strickland*.

The second argument that Kadel contends should have been included in his appeal, a claim for ineffective assistance of trial counsel, was raised on direct appeal in Kadel's *pro se* brief. Thus, the Minnesota Court of Appeals considered this claim. That court disposed of the claim by concluding it was meritless. Ineffective assistance claims cannot be based on a counsel's alleged failure to raise a meritless argument. *See Gray v. Bowersox*, 281 F.3d 749, 756 n. 3 (8th Cir. 2002), *cert. denied*, 537 U.S. 1115 (2003). Further, when a legal argument has no merit, it follows that a defendant cannot be prejudiced as a consequence of its absence as an appellate issue. *See Thompson v. Jones*, 870 F.2d 432, 435 (8th Cir. 1988). More acutely, where a petitioner's ineffective assistance of trial counsel claim is unlikely to succeed on direct appeal, appellate counsel's failure to raise the claim does not result in prejudice. *See Zinzer v. Iowa*, 60 F.3d 1296, 1299 (8th Cir. 1995). Thus, Kadel failed to prove that his appellate counsel was deficient for failing to raise this claim and that he was prejudiced by that failure.

Based on a review of the record, this Court concludes that the states courts' determination regarding Kadel's appellate representation was not contrary to or an unreasonable application of clearly established United States Supreme Court precedent. Nor did the state court proceedings result in a decision that was based on an unreasonable determination of facts in light of the evidence presented.

## III.   CERTIFICATE OF APPEALABILITY

A § 2254 habeas corpus petitioner cannot appeal a denial of his petition unless he is granted a Certificate of Appealability, ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA cannot be granted, unless the petitioner "has made a substantial showing of the

denial of a constitutional right." 28 U.S.C. § 2253(c)(3). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. Daniel*, 529 U.S. 473, 484 (2000).

In this case, the Court finds it unlikely that any other court, including the Eighth Circuit Court of Appeals, would decide Kadel's claims any differently than they have been decided here. Kadel has not identified, and the Court cannot independently discern, anything novel, noteworthy, or worrisome about this case that warrants appellate review. Kadel should **not** be granted a COA in this matter.

## IV.    RECOMMENDATION

Based upon the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.    Kadel's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Doc. No. 1] be **DENIED**;

2.    This action be **DISMISSED WITH PREJUDICE**; and

3.    Kadel **NOT** be granted a Certificate of Appealability.

Dated:  March 7, 2012

*s/ Steven E. Rau*
STEVEN E. RAU
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **March 22, 2012,** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.